FILED
MAY 13 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SECURITY CHAIN COMPANY, a division of BURNS BROS. INC., an Oregon corporation,
Plaintiff,

CV 10-1257-PK

OPINION AND ORDER

QUALITY CHAIN CORPORATION, an Oregon corporation,
Defendant.

PAPAK, Judge:

Plaintiff Security Chain Company ("Security Chain") filed this action against defendant Quality Chain Corporation ("Quality Chain") arising from a dispute over the advertising and production of tire chains. Security Chain alleges patent infringement in violation of 35 U.S.C. §§271, 281, 283-285; false advertising, trade dress infringement, unfair competition, and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; trade dress infringement in violation of Oregon common law; and passing off and creating a likelihood of

confusion in violation of the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. 646.608. Quality Chain asserts counterclaims for false patent marking pursuant to 35 U.S.C. §292. Now before the court are the parties' claim construction briefs (#65, 66, 79, 80, 89, 90) pertaining to Security Chain's patent infringement claims. The single disputed term is construed below.

## APPLICABLE LAW

"A determination of infringement requires a two-step analysis. First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." *Abraxis Bioscience, Inc. v. Mayne Pharma Inc.*, 467 F.3d 1370, 1375 (Fed. Cir. 2006). Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*).

### I. When to Construe Claim Terms

Although district courts need not construe every limitation in a patent's claims, they should interpret the scope of any term where parties present a "fundamental disagreement." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech Co., Ltd.*, 521, F.3d 1351, 1362 (Fed. Cir. 2008) (even though parties agreed that phrase "only if" had a well-understood meaning capable of application without judicial interpretation, district court erred by failing to construe the term because the parties disputed the scope of the claim based on the phrase)

### II. Sources of Evidence

To construe the claims of a patent, the district court looks primarily to three sources: the claims, the specification, and, if entered into evidence, the prosecution history. *See Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991). In some cases, the court may

rely on other, extrinsic evidence (including expert testimony), in interpreting these sources of intrinsic evidence. *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 631 (Fed. Cir. 1987). However, "[i]n most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

**III. Claim Language**

When construing claims, the analysis begins with, and must focus on, the language of the claims themselves. *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). The words of a claim "are generally given their ordinary and customary meaning," that is, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005) *(en banc)* (citations omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

If the claim language is clear on its face, then the rest of the intrinsic evidence is considered only for whether any deviation from the plain meaning is specified. *See Interactive Gift*, 256 F.3d at 1331. Deviation may be warranted if, for example, the patentee has "chosen to be his own lexicographer," or if the patentee has disclaimed a certain portion of the claim scope that would otherwise be afforded by the plain meaning. *Id.* (citations omitted). Where the claim language is not clear, other intrinsic evidence may be considered to resolve the lack of clarity. *See id.*

Where the ordinary meaning of a claim term is not be readily apparent, the context in which a word appears in a claim will inform the construction of that word. *See Phillips*, 415 F.3d. at 1314. Similarly, other claims of the patent in question "can also be valuable sources of enlightenment as to the meaning of a claim term." *Id.* Because claim terms are normally used consistently throughout the patent, "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* The presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim. *Id.* at 1315.

In addition, where a term has more than one common meaning, the patent disclosure "serves to point away from the improper meanings and toward the proper meanings." *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed. Cir. 2003) (citation omitted). If more than one definition is consistent with the usage of a term in the claims, the term may be construed to encompass all consistent meanings. *See Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002).

Where a claim uses different terms, the terms are presumed to have different meanings. *See, e.g.*, *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings."); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("the use of two terms in a claim requires that they connote different meanings. . . .").

//

//

## IV. Specification

Patent claims must be read in light of the specification. *See Markman*, 52 F.3d at 979. The specification "is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. Where a claim term has multiple, yet potentially consistent, definitions, the rest of the intrinsic record, beginning with the specification, can provide further guidance. *See Brookhill-Wilk*, 334 F.3d at 1300. If the patentee acted as his own lexicographer by explicitly defining a claim term in the specification, the term is construed according to the provided definition rather than the ordinary meaning of the term. *See CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Moreover, the specification may define a term by implication. *See Phillips*, 415 F.3d at 1321. The specification may also function to limit the claims' scope by indicating that the invention and all of its embodiments fall within only a narrow portion of the potentially broader meaning of a claim term. *See SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).

It is error, however, to impute to the claim a limitation merely inferred from the embodiments described in the specification. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905 (Fed. Cir. 2004). Without more, an embodiment disclosed in the specification may not limit the claims. *Id.* at 906. Even when the specification describes only a single embodiment, the claims of the patent are not to be construed as restricted to that embodiment unless the patentee demonstrates a clear intention to limit the claim scope using "words or expressions of manifest exclusion or restriction." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). Absent clear statements of scope, courts are constrained to follow the language of the claims and not that of the written description provided by the specification. *See id.* at

1328; *see also Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988). Indeed, it is well settled that "a claim must explicitly recite a term in need of definition before a definition may enter the claim from the written description. This is so because the claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). The *Renishaw* court stated, further, that:

> a party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim with which to draw in those statements. Without any claim term that is susceptible of clarification by the written description, there is no legitimate way to narrow the property right.

*Id.*; *see also id.* at 1249 ("If we need not rely on a limitation to interpret what the patentee meant by a particular term or phrase in a claim, that limitation is "extraneous" and cannot constrain the claim").

Absent extraordinary circumstances, by contrast, claims should be construed so as to include within their scope any preferred embodiment described in the specification. *See, e.g.*, *Vitronics*, 90 F.3d at 1583 ("an interpretation [pursuant to which the preferred embodiment falls outside the scope of the claims] is rarely, if ever, correct and would require highly persuasive evidentiary support"); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) ("it is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way").

//

//

**BACKGROUND**

Security Chain sells tire chain products used for passenger vehicles, emergency vehicles, light trucks/SUVs, and commercial trucks. Quality Chain also sells tire chains for all types of vehicles. Security Chain and Quality Chain are direct competitors in the tire chain industry.

On April 5, 1994, Joseph Maresh obtained U.S. Patent No. 5,299, 613 (the "'613 Patent") for "Tire Chain Cross Member Assemblies and Tire Chains Using the Same," which he assigned to Security Chain's parent company. At issue in this case is the "split-bushing" described in the '613 Patent used in conjunction with a connector that joins the zig-zag-shaped cross member (cable extending across the tire tread to provide traction) to the hoop-shaped side member (cable keeping the chain affixed to the tire).

The abstract for the '613 Patent describes the invention in part as follows:

> A cross member assembly of a tire chain comprises a flexible cable having double bushings at each of its ends. Each double bushing includes an outer bushing and an inner bushing spaces longitudinally of the cable and connected by a bridge. The outer bushing securely grips the cable, and the inner bushing *embraces the cable without gripping it*. Each double bushing is attached to a plate for connecting the cable to a side member of the tire chain. . . . Tire chains using the cross member assemblies have substantially increased endurance.

(Newman Decl., #67, Ex. A at 1) (hereinafter "'613 Patent") (disputed term italicized).

The patent contains three independent claims– claim 1, claim 11, and claim 12– each containing instances of the term for which the parties seek construction. Claim 1 describes:

> A cross member assembly for a tire chain, comprising[:]
>
> [1]a flexible cable having a double bushing at least at one end of the cable, the double bushing including an outer bushing located at a distal end of the cable and an inner bushing spaced inward longitudinally along the cable and joined to the outer bushing by a bridge, the outer bushing securely gripping the cable end therein, and the inner bushing *embracing the cable without gripping the cable*[;] and [2] a connector adjacent to the end of the cable for connecting the cable to a

> side member of a tire chain, the connector including a plate having an opening therein through which the outer busing is inserted, the plate having a bent-over tab extending from a body of the plate and trapping the inserted outer bushing between the tab and the plate body, with the inner bushing located exteriorly of the opening and with the bridge located in the opening.

'613 Patent, 6:21-37 (disputed term emphasized). Claim 11 similarly describes:

> A tire chain cross member assembly comprising a flexible cable and a double bushing, the double bushing including an outer bushing located at a distal end of the cable and an inner bushing spaced inward longitudinally along the cable and joined to the outer bushing by a bridge, the outer bushing securely gripping an end of the cable, and the inner bushing *embracing the cable without gripping the cable.*

'613 Patent, 7:1-8 (disputed term emphasized). Claim 12 describes a tire chain– not just the cross member assembly– but still describes each cross member as employing an outer bushing "securely gripping a corresponding cable" and an inner bushing "*embracing a* corresponding *cable without gripping it.*" '613 Patent, 8:25-28 (disputed term emphasized). The parties generally agree that the single term or phrase that the court must now construe is "embracing the cable without gripping the cable" and its closely related variant "embracing a corresponding cable without gripping it."[1]

**CONSTRUCTION**

The parties offer drastically different constructions of "embracing the cable without gripping the cable." I reject both parties' proposed constructions and ultimately construe "embracing the cable without gripping the cable" as "embracing the cable without compressing the cable strands within the bushing."

On the one hand, Security Chain contends that "embracing the cable without gripping the

---

[1] Security Chain also requests that the court define "securely gripping" as an intermediate step in reaching an appropriate construction of "embracing the cable without gripping the cable."

cable" should be construed in reference to "securely gripping." Security Chain notes that the specification of the '613 Patent describes the outer bushing and inner bushing as having opposing functions, compelling those terms to be understood in opposition to one another. In particular, Security Chain argues that the outer bushing keeps the cable inside the connector while the inner bushing moves the flex point of the cable away from the relatively stiff region near the connector eyelet to a relatively flexible region where the cable exits the inner bushing. According to Security Chain's argument, this transfer of the flex point to a relatively flexible part of the cable is at the core of the invention claimed by the '613 Patent. Security Chain reasons that "embracing without gripping" refers to any conformation of the inner bushing that permits more flexibility in the cable than the outer bushing, which securely grips the cable. Thus, Security Chain argues, "embracing without gripping" essentially means "embracing without securely gripping." Security Chain contends that the '613 Patent specification identifies compression of the cable fibers as the primary characteristic of "securely gripping" and thus construes "securely gripping" as "permanent deformation producing compression of the cable within the bushing so that under intended use conditions there is no longitudinal movement of the cable fibers." Consequently, Security Chain urges the court to construe "embracing without gripping" as "supporting the cable *without* permanent deformation producing compression of the cable within the bushing so that under intended use conditions there is no longitudinal movement of the cable fibers. (Newman Decl., #91, Ex. A.) (emphasis added).

Quality Chain rejects Security Chain's binary conception of "securely gripping" and "embracing without gripping," instead envisioning a continuum of grip strength along which these terms should be located. Quality Chain contends that "embracing without gripping" sits at

the absolute bottom of that continuum, since "without gripping" implies no grip strength whatsoever. "Gripping," a term not used in the '613 Patent, connotes an intermediate grip strength. "Securely gripping" is yet a stronger grip, one which is sufficient to retain the cable in the outer bushing under the conditions in which the tire chains are intended to be used. Quality Chain also identifies key characteristics of the inner bushing from the '613 Patent specification, including that the inner bushing can be slipped over the cable, is not crimped, deformed, or closed, has an inner diameter slightly greater than the outer diameter of the cable, and does not contact the cable until the cable bends. Based on these characteristics, Quality Chain proposes construing "embracing the cable without gripping the cable" as something like "loosely containing the cable without gripping the cable."[2] Quality Chain admits that the term "loosely" is not found within the specification, but argues nevertheless that its construction captures the relationship between the inner bushing and cable described in the claims, specification, and file history. Alternatively, Quality Chain proposes a construction employing language found within the specification, where "embracing the cable without gripping the cable" means "the cable is contained within the bushing and the inner diameter of the bushing is greater than the outer diameter of the cable."

Security Chain's primary proposed construction is incorrect because it significantly alters

---

[2] I paraphrase because Quality Chain's proposed construction is grammatically problematic. Quality Chain construes "the inner bushing embracing the cable" as "the cable is loosely contained within the inner sleeve" while giving "without gripping the cable" its plain and ordinary meaning. Thus, to apply Quality Chain's proposed construction to the entire phrase "embracing the cable without gripping the cable" would require replacing that phrase with the declarative sentence "The cable is loosely contained within the inner sleeve without gripping the cable." That result is ungrammatical, with the subject of the sentence shifting between the cable and the inner bushing.

the meaning of the claim language. Security Chain's construction reads "securely" out the claims by essentially interpreting "without gripping" as "without securely gripping." Where a claim uses different terms, the terms are presumed to have different meanings. *See, e.g., CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG,* 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings."); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("the use of two terms in a claim requires that they connote different meanings. . . ."). The patentee could have chosen to claim that the inner bushing embraced the chain without securely gripping it, but he did not. Thus, I cannot construe the patent's claims in contradiction to their explicit language, which fundamentally determines the scope of the patent. *See Phillips*, 415 F.3d at 1312 ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude") (internal quotations and citations omitted). Therefore, "without gripping" cannot be read as "without securely gripping."

Moreover, this case is unlike *Power Mosfet,* cited by Security Chain as an example of a court determining that an adverbial modifier does not change the meaning of a claim term. *Power Mosfet Techs., L.L.C. v. Siemens AG,* 378 F.3d 1396, 1409-10 (Fed. Cir. 2004) (holding that "contact . . . directly" means the same as "contact" because in the context of the patent the word "directly" imposed no additional restrictions). In that case, two claims included the term "directly" while a third claim lacked that term. *Id.* at 1409. The Court observed that since "contacting" required an aspect of physical contact, the adverb "directly" was irrelevant. *Id.* 1409. Thus, *Power Mosfet* reiterated that different terms may be construed identically only

where "neither the plain meaning nor the patent itself commands a difference in scope between two terms . . . ." *Id.* at 1410. Here, unlike in *Power Mosfet*, the '613 Patent consistently uses the term "securely gripping," never using the term "gripping" alone. Further, there is no indication from the patent language or the nature of the invention that the adverb "securely" is redundant like "directly" was in *Power Mosfet*. In sum, Security Chain's construction contradicts the language of the patent claims.

At the same time, I also find Quality Chain's proposed constructions to be lacking. Quality Chain's primary construction essentially replaces "embracing without gripping" with "loosely containing without gripping." By leaving "gripping" undefined, this phrasing remains just as ambiguous as the original claim language that it seeks to clarify and fails to delineate the scope of the claims for the jury. Moreover, while Quality Chain's alternative construction draws its operative language from the '613 Patent specification, it focuses too narrowly on the dimensions of the inner bushing and cable in the preferred embodiment without necessarily speaking to the essence of the invention. Therefore, a different construction is necessary.

Fortunately, key sections of the specification provide concrete insight into the meaning of "embracing without gripping." First, I derive meaning from the way the '613 Patent differentiates between the outer and inner bushing in the preferred embodiment. The specification states that the outer bushing is crimped or deformed so that it "securely grips the cable end, compressing the cable strands within the outer bushing." '613 Patent, 4:20-21. By contrast, the inner bushing is not closed or deformed, and "thus it embraces, but does not grip the cable." '613 Patent, 4:23-26. Thus, the specification suggests that, unlike the outer bushing, the inner bushing does not compress the cable.

Second, the specification's discussion of the invention's improvement over the prior art also clarifies the nature of the inner bushing. *See Phillips*, 415 F.3d at 1316 ("the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.") (internal quotation and citation omitted); *see also Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.* 450 F.3d, 1354-55 (Fed. Cir. 2006) (construction properly in part based on specification's emphasis of particular feature in solving problems of the prior art). The patent emphasizes that the prior art chains had a single crimped bushing that "tightly compacted" the cable strands, causing the cable to be stiff inside and adjacent to the bushing. '613 Patent, 5:12-14. This cable stiffness at the point of repetitive flexing near the connector plate caused metal fatigue and, ultimately, cable breakage. '613 Patent, 5: 18-21. By contrast, the patent explained that "[w]hen double bushings are used in accordance with the invention," the cables do not bend near the openings of the connector plates. '613 Patent, 5: 26-29. Instead, the inner bushing moves the flex point from the relatively stiff area of the cable where the cable strands are tightly compacted to "a region where the cross cable is relatively flexible," ostensibly near the inner bushing. '613 Patent, 5: 29-31. Thus, the specification highlights the essence of the invention, which is shifting the flex point from a region of rigid, compressed cable strands (near the single bushing of the prior art) to a region of flexible cable strands (near the inner bushing of the current invention). Accordingly, a person of ordinary skill in the art would likely read the patent language describing the inner bushing as "embracing the cable without gripping the cable" to mean "embracing the cable without compressing the cable within the bushing" in order to give effect to the patent's explanation that

the cable must retain its flexibility around the inner bushing.[3]

Third, other aspects of the specification comport with this construction. The description of the preferred embodiment notes that "the inner diameter of the inner bushing is slightly greater than the outer diameter of the wrapped cable." '613 Patent, 4:29-31. Thus, some amount of space exists, however minute, between the inner bushing and the cable. Additionally, in the discussion of the improvement on the prior art, the specification states that the cable can bend "until it contacts a corresponding inner bushing . . . ." '613 Patent, 5:32-33. This again implies that the cable has some degree of mobility within the inner bushing. Any compression of the cable at the inner bushing would be inconsistent with these two descriptions of the relationship between the inner bushing and the cable.

Finally, this Court's construction provides a fixed, unambiguous, and legally operative meaning to "embracing the cable without gripping the cable." *See Chimie v. PPG Indus.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005). An expert could easily test whether the inner bushing of an allegedly infringing tire chain compresses the cable strands by measuring the compression of the cable within the inner bushing and comparing those to similar measurements elsewhere along the cable. If there is any measurable compression of the cable within the inner bushing, the inner

---

[3] Quality Chain objects that while discussion of flex points and cable flexibility may be proper in addressing a potential dispositive motion based on the doctrine of equivalents, it has no place in claim construction, which focuses on literal infringement. I disagree. Understanding the nature of the invention and the ways it improved over prior art is crucial to the contextual approach to claim construction embraced by the Federal Circuit. *See Phillips*, 415 F.3d at 1316 ("the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.") Here, the invention's explicit shifting of the flex point–and corresponding change in cable flexibility at that point– lies at the heart of the patentee's improvement over prior art.

bushing is not "embracing the cable without gripping the cable."

## CONCLUSION

For the foregoing reasons, "embracing the cable without gripping the cable" means "embracing the cable without compressing the cable strands within the bushing" and "embracing a corresponding cable without gripping it" means "embracing a corresponding cable without compressing its strands within the bushing."

Dated this 13th day of May, 2011.

Paul Papak

Honorable Paul Papak
United States Magistrate Judge